IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SAM SMITH,

        Plaintiff,

   v.                                CIVIL NO. 1:25-CV-21
                                            (KLEEH)

EXOMOD CONCEPTS, LLC,
RICHARD ZEV KATZEFF,
JOHN CONNOLLY,
HDK OF BOWLING GREEN, LLC, and
DENNIS E. LAUBE,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

Pending before the Court is a motion to dismiss filed by Defendants HDK of Bowling Green, LLC and Dennis E. Laube. For the reasons discussed below, the motion is granted in part and denied in part.

### I.  INTRODUCTION AND PROCEDURAL HISTORY

On February 14, 2025, Plaintiff Sam Smith ("Plaintiff") filed a complaint in the Circuit Court of Marion County, West Virginia, against the Defendants, ExoMod Concepts, LLC, Richard Zev Katzeff, John Connolly, HDK of Bowling Green, LLC d/b/a HDK Custom Mopar K-Frames and/or HDK Suspension, and Dennis E. Laube (together, "Defendants"). See ECF No. 1-2. On March 21, 2025, Defendants HDK of Bowling Green, LLC and Dennis E. Laube (the "HDK Defendants") removed the case to this Court. See ECF No. 1.

SMITH V. EXOMOD                                          1:25-CV-21

## MEMORANDUM OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

Plaintiff alleges that Defendants engaged in wrongful conduct relating to Plaintiff's purchase of two custom-made vehicles: a Dodge Charger (the "Charger") and a Dodge Dart (the "Dart").  He brings the following causes of action:

- Count One: Breach of Contract (Charger);

- Count Two: Breach of Express Warranty (Charger);

- Count Three: Breach of Implied Warranties (Charger);

- Count Four: Breach of Contract (Dart);

- Count Five: Breach of Express and Implied Warranties (Dart);

- Count Six: Violation of Lemon Law (Charger);

- Count Seven: Magnuson-Moss Warranty Act (Charger);

- Count Eight: Unjust Enrichment;

- Count Nine: Fraud;

- Count Ten: Negligent Misrepresentation;

- Count Eleven: Conversion;

- Count Twelve: Civil Conspiracy; and

- Count Thirteen: Piercing the Corporate Veil.

On March 28, 2025, the HDK Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See ECF No. 5.  The motion to dismiss is fully briefed and ripe for review.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

## II.   FACTUAL BACKGROUND

The following facts are taken from the complaint. For purposes of deciding this motion, the Court assumes that they are true.

ExoMod Concepts, LLC ("ExoMod") is a company that builds "Retromod" motor vehicles, or vehicles "that [have] been modified or customized with modern features and technologies while retaining a distinct retro or classic appearance." Id. ¶ 13. ExoMod also builds "Restomod" vehicles, or vehicles that have been restored with modern modifications. Id. ¶¶ 14-15. ExoMod's website boasts "more than 50 years' experience in the muscle car industry, building some of the world's finest and highest-scoring concourse restorations and custom Restomods." Id. ¶ 16. Richard Zev Katzeff ("Katzeff") is the CEO of ExoMod. Id. ¶ 17.

Two specific custom vehicles are at issue here. The first is a "Retromod" custom car identified as "C68 Carbon – Midnight Train" (the "Charger"). Id. ¶ 19. Plaintiff entered into a contract with ExoMod for the build of the Charger on or about August 17, 2023. Id. ¶ 19-20. The second custom vehicle is a "Restomod" 1969 Dodge Dart (the "Dart"). Id. ¶¶ 32, 36. Plaintiff entered into a contract with ExoMod for the build of the Dart on or about October 17, 2023, while the Charger was still being built and before Plaintiff had any knowledge of the defective condition of

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

the Charger.  Id. ¶ 32.  Plaintiff believed that Katzeff had begun building the Dart and would finish it according to Plaintiff's "specs."  Id. ¶ 33.  Plaintiff and Katzeff discussed that the build would be completed in or around February 2024 and that the "all-in" price was $150,000.00.  Id. ¶¶ 37–38.  Katzeff promised and represented to Plaintiff that the Dart would be a "SEMA quality"[1] build and that the Dart would be worth between $250,000.00 and $300,000.00.  Id. ¶¶ 39–41.

Katzeff advised Plaintiff that the Dart was being built at "HDK Suspension" by "Denny Laube," whom Katzeff contended "was very well known and respected in the Midwest" and a "famous 70s and 80s Super Stock race car driver from California."  Id. ¶ 34–35.  Katzeff directed Plaintiff "to issue certain payments directly to purported subcontractors, including . . . Laube."  Id. ¶ 43.  Katzeff instructed Plaintiff to pay Laube and another subcontractor with cash because they wanted to be paid "under the table."  Id. ¶ 44.  Plaintiff followed up with Katzeff regarding the status of the Dart, and Katzeff informed Plaintiff on multiple

---

[1] "SEMA is an annual auto industry only trade show for the automotive aftermarket.  It is one of the premier auto industry trade shows and it features high-end custom cars."  Compl., ECF No. 1-2, at ¶ 40.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

occasions that the build was running on time and within budget.
Id. ¶ 45.

Eventually, after Plaintiff had already spent $138,000.00 on
the Dart, Katzeff and a paint subcontractor informed Plaintiff
that the paint job would add $50,000.00 to the total cost of the
build.  Id. ¶ 46.  Plaintiff asked "Defendants" to ship the Dart
to him so that he could have a local, trusted vendor paint it at
a lower cost.  Id. ¶ 47.  When the Dart arrived for painting, it
was obvious that the Dart was nowhere near complete and was wholly
inoperable, despite the fact that Plaintiff had already paid
$138,000.00 of the $150,000.00 "all in" price.  Id. ¶ 48.  After
receiving the Dart in this condition, Plaintiff again questioned
Katzeff about the status of the Dart build and its cost.  Id. ¶ 49.
Plaintiff asserts that he revoked any acceptance of the Dart.  Id.
¶ 50.

Katzeff and "Defendants" acknowledged that the Dart project
was "well over budget" and advised Plaintiff that it would cost an
additional $60,000.00 to finish the Dart (in addition to the
$138,000.00 that Plaintiff had already paid).  Id. ¶ 51.  The
additional $60,000.00 did not include the $25,000.00 that
Plaintiff had paid for paint from his local vendor.  Id.  Plaintiff
raised questions about whether the Dart would be of "SEMA quality"

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

when it was finished. Id. ¶ 54. As delivered, the Dart does not have a VIN plate, and it cannot be titled. Id. ¶ 55.

Plaintiff remained in contact with Katzeff "and certain other Defendants" regarding the cost of the Dart build and Katzeff's instructions to pay other vendors directly. Id. ¶ 56. Katzeff responded on one occasion that he had used Plaintiff's payments towards the Dart to purchase a Porsche for himself and that Plaintiff's payments had not gone toward the Dart. Id. ¶ 57. On another occasion, Katzeff told Plaintiff that the project was "overbudget," but that it was "not just [Laube's] oversight but [Katzeff's] as well" and that "[Laube] went over budget by 10-15k." Id. ¶ 58. Katzeff and "Defendants" bought parts for the Dart with money paid by Plaintiff, but the parts could not be used on the Dart, so Katzeff and "Defendants" planned to "sell them on eBay or other outlets at a steep discount." Id. ¶ 59. ExoMod shipped some Dart parts to Plaintiff, and Plaintiff learned that some of the parts, for which Plaintiff had paid, "were actually damaged, in poor condition, and/or were otherwise made for other vehicles and were not compatible with the Dart." Id. ¶ 60. ExoMod shipped parts to Plaintiff in multiple shipments, and Plaintiff incurred costs associated with the shipments. Id. ¶ 61. Katzeff also told Plaintiff that "Defendants" were charging Plaintiff a "project management fee" for Katzeff's involvement in the Dart

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

project, which was allegedly included in the "all-in" price.  Id. ¶ 62.

Plaintiff asserts that "certain Defendants have co-mingled assets and/or comingled funds paid by [Plaintiff] for the Dart project."  Id. ¶ 63.  He asserts that "Defendants embarked upon and are involved in a joint venture, joint enterprise, and/or civil conspiracy regarding the Dart build project" and that "certain Defendants have concealed their involvement in the Dart build project for improper and/or wrongful purposes."  Id. ¶¶ 64-65.

### III.    LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted."  In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint."  Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility exists "when the plaintiff pleads factual content

SMITH V. EXOMOD                                              1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

## IV.    DISCUSSION

The HDK Defendants move to dismiss all claims against them, as well as Plaintiff's request for punitive damages. In response, Plaintiff concedes that the HDK Defendants were not involved with the build of the Charger, so the only claims at issue against them relate to the Dart. The remaining claims against the HDK Defendants are Count Four (Breach of Contract – Dart), Count Five (Breach of Express and Implied Warranties – Dart), Count Eight (Unjust Enrichment), Count Nine (Fraud), Count Ten (Negligent Misrepresentation), Count Eleven (Conversion), Count Twelve (Civil Conspiracy), and Count Thirteen (Piercing the Corporate Veil), along with Plaintiff's request for punitive damages. For the

SMITH V. EXOMOD                                               1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

reasons discussed below, the Court grants in part and denies in part the motion to dismiss.

### A.   Count Four (Breach of Contract)

"In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach." Nance v. Huntington W. Va. Hous. Auth., No. 16-0855, 2017 WL 2210152, at *5 (W. Va. May 19, 2017) (unpublished) (citation omitted).  "It is a fundamental tenet of contract law that the parties must enter into a meeting of the minds in order to form an enforceable contract." Chesapeake Appalachia, L.L.C. v. Hickman, 781 S.E.2d 198, 216 (W. Va. 2015).

The HDK Defendants argue that the complaint fails to allege the existence of a contract between Plaintiff and the HDK Defendants.  They argue that the complaint suggests, at most, that they were subcontractors to ExoMod.  Plaintiff points out that he made allegations against "all Defendants."  Plaintiff also argues that even if the HDK Defendants were not a party to the contract, they should still be held responsible under a breach of contract claim.

The Court agrees with the HDK Defendants.  The complaint explicitly states that "[o]n or about October 17,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

2023, . . . [Plaintiff] entered into a second contract with Defendant ExoMod to purchase a custom 1969 Dodge Dart[.]" Compl., ECF No. 1-2, at ¶ 32. The complaint indicates that Plaintiff's constant point of contact was Katzeff (the CEO of ExoMod) and that all communications involving the Dart came from Katzeff. Katzeff told Plaintiff that Laube would be working on the Dart. Plaintiff does not assert that he ever had contact with the HDK Defendants. Rather, the complaint suggests that the HDK Defendants were involved only through their relationship with ExoMod. The breach of contract claim regarding the Dart must fail against the HDK Defendants because the complaint fails to allege, plausibly, that a contract existed between Plaintiff and the HDK Defendants. The breach of contract claim is dismissed against the HDK Defendants.

**B.   Count Five (Breach of Express and Implied Warranties - Dart)**

**1.   Express Warranty**

Under the West Virginia Code,

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

W. Va. Code § 46-2-313.  To establish a breach of express warranty, a plaintiff must "show the existence of an express warranty, breach of the express warranty, and damages proximately caused by the breach."  Bishop v. Triumph Motorcycles (Am.) Ltd., No. 3:18-CV-186, 2021 WL 4316810, at *9 (N.D.W. Va. Sept. 22, 2021), aff'd, No. 21-2113, 2022 WL 17103710 (4th Cir. Nov. 22, 2022) (citation omitted).

The HDK Defendants argue that the complaint does not allege that they directly communicated any warranty terms to Plaintiff. They note that the complaint alleges that Katzeff, "on behalf of himself and all Defendants," made express promises about the quality of the Dart and how much it would be worth.  Plaintiff argues that the complaint adequately alleges ExoMod and the HDK

SMITH V. EXOMOD                                                1:25-CV-21

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

Defendants worked in tandem such that any warranties provided were on behalf of all Defendants involved in the project.

The Court agrees with the HDK Defendants.  The complaint does not allege that the HDK Defendants made any express warranties or that Katzeff had authority to make express warranties on behalf of the HDK Defendants.  The blanket allegation that Katzeff made express warranties on behalf of "all Defendants" is conclusory. The express warranty claim is dismissed against the HDK Defendants.

### 2.  Implied Warranties

West Virginia law provides for two types of implied warranties: (1) the implied warranty of merchantability, and (2) the implied warranty of fitness for a particular purpose.  See W. Va. Code §§ 46-2-314, 46-2-315.  The HDK Defendants argue that Plaintiff has insufficiently pled both types.

### a.  Implied Warranty of Merchantability

Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  See id. § 46-2-314(1).  The implied warranty of merchantability provides that for goods to be merchantable, they must be fit for the ordinary purposes for which they are sold.  See id. § 46-2-314(2)(c).

SMITH V. EXOMOD                                              1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

The HDK Defendants argue that the complaint fails to allege that Plaintiff and the HDK Defendants had a buyer-seller relationship and that the work of the HDK Defendants was not merchantable. Plaintiff argues that West Virginia has abolished the privity of contract requirement. Plaintiff relies on his allegations that the HDK Defendants were the builders of the Dart and that the Dart is inadequate and inoperable.

The Court agrees with the HDK Defendants that the claim should be dismissed. The complaint does not allege that the HDK Defendants are merchants with respect to goods of this kind (custom-built cars). Without question, it alleges that ExoMod markets itself as a dealer and merchant of custom cars. There is no allegation, however, that the HDK Defendants regularly build vehicles like the Dart. The implied warranty of merchantability claim is dismissed against the HDK Defendants.

b.   **Implied Warranty of Fitness for a Particular Purpose**

Under West Virginia law, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." See id. § 46-2-315. The HDK Defendants argue that

13

SMITH V. EXOMOD                                                    1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

the complaint does not allege a buyer-seller relationship and that it fails to state any particular purpose for the Dart beyond its ordinary purpose as a custom-built car. Plaintiff argues that the complaint adequately alleges that the Dart was supposed to be a "Restomod" of SEMA quality, "above and beyond the particular purpose of a normal custom build."

The Court agrees with the HDK Defendants. The applicable statute states that the warranty runs from the seller of a product to the buyer. The complaint does not suggest that the HDK Defendants are sellers of any product. It states that Laube helped with the build of the Dart but does not allege the extent of his assistance or that he or his company sold any items or parts. The claim for implied warranty of fitness for a particular purpose is dismissed against the HDK Defendants.

**C.    Eight (Unjust Enrichment)**

The elements of an unjust enrichment claim in West Virginia are as follows:

> (1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

Richards v. Octane Env't, LLC, No. 1:18-CV-158, 2019 WL 6528595, at *4 (N.D.W. Va. Dec. 4, 2019) (quoting Barker v. Naik, No. 2:17-cv-04387, 2018 WL 3824376, at *5 (S.D.W. Va. Aug. 10, 2018)). "[U]njust enrichment . . . is but the equitable reason for requiring payment for value of goods and services received." Realmark Devs., Inc. v. Ranson, 588 S.E.2d 150, 153 (W. Va. 2003) (citation and emphasis omitted).

The HDK Defendants argue that the complaint fails to allege facts establishing that the retention of the payments paid directly to the HDK Defendants would be inequitable or unconscionable. Plaintiff points to his allegations that he paid the HDK Defendants directly and did not receive a high quality, fully functional, and safe Dart.

The Court agrees with Plaintiff. The complaint plausibly alleges that Plaintiff made payments to the HDK Defendants, that the HDK Defendants knew about the payments, that the HDK Defendants retained the money, that the HDK Defendants were $10,000.00 to $15,000.00 over budget, and that Plaintiff was not met with his expected performance. The Court denies the motion to dismiss the unjust enrichment claim.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

### D.    Count Nine (Fraud)

Under West Virginia law, the elements of fraud are "(1) that the act claimed to be fraudulent was the act of the defendant or induced by the defendant; (2) that it was material and false; (3) that the party relied upon it; and (4) that the party was damaged because he relied upon it."  Univ. of W. Va. Bd. of Trustees v. VanVoorhies, 84 F. Supp. 2d 759, 769 (N.D.W. Va. 2000), aff'd, 278 F.3d 1288 (Fed. Cir. 2002).  Fraud includes "all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another."  Watkins by & through Chapman v. Judy, No. 1:22CV64, 2022 WL 17813704, at *3 (N.D.W. Va. Dec. 19, 2022) (citing Stanley v. Sewell Coal Co., 285 S.E.2d 679, 682 (W. Va. 1981)).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  This Court has interpreted Rule 9(b) to mean that a "plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements."  Ayers v.

SMITH V. EXOMOD                                          1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

Cont'l Cas. Co., No. Civ.A. 5:05CV95, 2006 WL 278540, at *4 (N.D.W.
Va. Feb. 2, 2006) (citing Adams v. NVR Homes, Inc., 193 F.R.D.
243, 249–50 (2000)).

The HDK Defendants argue that the complaint lumps all
Defendants together in the fraud claim and fails to identify a
specific false statement made by the HDK Defendants. Plaintiff
argues that the complaint articulates that the ExoMod Defendants
were operating with and on behalf of the HDK Defendants. Plaintiff
further states that he believed, and has set forth in his
allegations, that the HDK Defendants were essentially one in the
same with the ExoMod Defendants for purposes of the Dart build.

The Court agrees with the HDK Defendants. The complaint fails
to cite any specific fraudulent acts or statements attributable to
the HDK Defendants. Instead, it posits that Plaintiff thought the
HDK Defendants were the same as the ExoMod Defendants. The
particularity requirements of Rule 9 are not satisfied here. The
fraud claim is dismissed against the HDK Defendants.

### E.    Ten (Negligent Misrepresentation)

Under West Virginia law,

> To state a claim for negligent
> misrepresentation . . . , a plaintiff must
> establish (1) that a defendant represented a
> matter as being true, (2) that the defendant
> had no knowledge of the truth of his
> representation, (3) that the representation

17

SMITH V. EXOMOD                                          1:25-CV-21

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

was false, and (4) that the plaintiff relied
on the false representation to his detriment.

Kerns v. Range Res. – Appalachia, LLC, No. 1:10CV23, 2011 WL
3753117, at *7 (N.D.W. Va. Aug. 23, 2011) (citations omitted and
numbers added).  The Supreme Court of Appeals of West Virginia has
also held that a plaintiff must allege a "sufficient special
relationship or duty" toward a defendant.  Kidd v. Mull, 595 S.E.2d
308, 317 (W. Va. 2004).

The HDK Defendants argue that the complaint does not allege
facts establishing that there was a special relationship or duty
between them and Plaintiff.  They also argue that it does not
identify any specific misrepresentations made by them, but,
rather, cites misrepresentations made by Katzeff.  Plaintiff
asserts that he has alleged sufficient facts to set forth a duty
"above and beyond" that of a typical vehicle purchase.  He cites
Katzeff's representation that the HDK Defendants were "very well
known and respected" and argues that the HDK Defendants had a duty
to provide information to Plaintiff regarding the status of the
build and the budget.

The Court agrees with the HDK Defendants that the claim should
be dismissed.  The complaint does not allege that the HDK
Defendants made any representations to Plaintiff.  Rather, the
representations made to Plaintiff were made by Katzeff.  The

SMITH V. EXOMOD                                              1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

negligent misrepresentation claim is dismissed against the HDK
Defendants.

### F.   Count Eleven (Conversion)

Under West Virginia law, "[t]he tortious or unlawful taking
of personal property, and the exercise of ownership and dominion
over it, against the consent of the owner is . . . a conversion of
the property[.]"   Mountaineer Fire & Rescue Equip., LLC v. City
Nat'l Bank of W. Va., 854 S.E.2d 870, 886 (W. Va. 2020) (citing
Syl. pt. 1, Arnold v. Kelly, 4 W. Va. 642 (1871)).   "Any distinct
act of dominion wrongfully exerted over the property of another,
and in denial of his rights, or inconsistent therewith, may be
treated as a conversion and it is not necessary that the wrongdoer
apply the property to his own use."   Syl. Pt. 17, Rodgers v.
Rodgers, 399 S.E.2d 664 (W. Va. 1990) (citation omitted).   Of note,
"[b]ad faith or evil motive" is not an element of proof.   Id. at
677.

The HDK Defendants argue that the complaint does not allege
that they wrongfully withheld any of his property.   They further
argue that Plaintiff only provides one factually specific
allegation: that Katzeff used funds from the Dart build to purchase
a Dart for himself.   The HDK Defendants acknowledge the allegation
that Laube went over budget by $10,000.00 to $15,000.00 but claim

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

that the alleged overage does not constitute conversion.  Plaintiff
argues that the complaint adequately alleges that all Defendants
were paid by Plaintiff and that all Defendants intentionally and
improperly used those funds because the money did not go toward
the Dart build.

The Court agrees with Plaintiff.  The factual support for the
conversion claim is sparse, but taken as a whole, Plaintiff has
plausibly stated a claim.  Plaintiff has alleged that he made
payments to the HDK Defendants, that the HDK Defendants worked on
the Dart, that the Dart was not completed as promised with
Plaintiff's money, that the HDK Defendants went over budget, and
that Plaintiff was ultimately asked to pay more money for
completion of the Dart.  Plaintiff alleges that Katzeff and
"Defendants" bought parts for the Dart with money paid by
Plaintiff, but the parts could not be used on the project, so
Katzeff and "Defendants" planned to "sell them on eBay or other
outlets at a steep discount."  Compl., ECF No. 1-2, at ¶ 59.
Katzeff told Plaintiff on one occasion that he had used Plaintiff's
payments towards the Dart to purchase a Porsche for himself and
that Plaintiff's payments had not gone toward the Dart.  Id. ¶ 57.
Plaintiff has alleged facts to support a claim that the HDK
Defendants possessed Plaintiff's money and did not use it for its
intended purpose, which would be an exercise of wrongful dominion

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

over Plaintiff's property.  Accordingly, the Court denies the motion to dismiss with respect to the conversion claim.

### G.   Count Twelve (Civil Conspiracy)

Under West Virginia law, a civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  Syl. Pt. 8, Dunn v. Rockwell, 689 S.E.2d 255 (W. Va. 2009).  "A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed upon people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)."  Id. at Syl. Pt. 9.  In addition to pleading an underlying tort, a plaintiff proceeding on a civil conspiracy claim must plead sufficient factual support for the existence of a shared conspiratorial objective and mutual agreement.  Jane Doe-1 v. Corp. of Pres. of the Church of Jesus Christ of Latter-day Saints, 801 S.E.2d 443, 476 (W. Va. 2017) (citation omitted).  The "agreement need not be express but may be based upon evidence of a course of conduct from which the agreement to act in concert may be implied."  Id. at 477 (citations omitted).  Additionally, "not every member of a

SMITH V. EXOMOD                                            1:25-CV-21

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

conspiracy must be aware of every action taken in furtherance of it." Id. at 473.

The HDK Defendants argue that the conspiracy allegations are conclusory and fail as a matter of law because there is no underlying tort. Plaintiff argues that the facts in the complaint, alongside the allegations highlighted by Defendants, support the claim for civil conspiracy.

The Court agrees with Plaintiff. Plaintiff sufficiently alleges two underlying torts: unjust enrichment and conversion (discussed above). The complaint alleges that all Defendants acted in concert or according to a common plan regarding the Dart build. The plan to build the Dart was not unlawful, but the alleged means (comingling and misusing funds) are. Plaintiff alleges that Katzeff and "Defendants" bought parts for the Dart with money paid by Plaintiff, but the parts could not be used on the project, so Katzeff and "Defendants" planned to "sell them on eBay or other outlets at a steep discount." Compl., ECF No. 1-2, at ¶ 59. Katzeff told Plaintiff on one occasion that he had used Plaintiff's payments towards the Dart to purchase a Porsche for himself and that Plaintiff's payments had not gone toward the Dart. Id. ¶ 57. It is plausible, based on these allegations, that the HDK Defendants were involved in a civil conspiracy with Katzeff. The

SMITH V. EXOMOD                                                    1:25-CV-21

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]**

Court denies the motion to dismiss with respect to the civil conspiracy claim.

### H.   Count Thirteen (Piercing the Corporate Veil)

"Under West Virginia law, piercing the corporate veil does not constitute an independent cause of action; rather, the alter ego doctrine is an equitable remedy invoked to disregard the corporate entity in order to find the shareholders liable for the debts of the corporation." Fluharty v. Stewart, No. 1:16CV136, 2018 WL 4656412, at *4 (N.D.W. Va. Sept. 27, 2018). Accordingly, "a party seeking to pierce the corporate veil must have a separate cause of action for which it seeks to recover damages from the corporation." Id. To the extent that piercing the corporate veil is asserted as an independent cause of action, it is dismissed against the HDK Defendants. This ruling has no effect on whether Plaintiff will be permitted to pierce the corporate veil.

### I.   Punitive Damages

West Virginia law allows for an award of punitive damages in the following circumstances:

> if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS [ECF NO. 5]

W. Va. Code § 55-7-29(a). At this stage, the Court finds that Plaintiff has adequately pled facts that could entitle him to punitive damages under the law. Accordingly, the motion to dismiss the request for punitive damages is denied.

### V.   CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

- The HDK Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 5];

- The motion is **GRANTED** with respect to Counts One, Two, Three, Four, Five, Six, Seven, Nine, Ten, and Thirteen;

- Counts One, Two, Three, Four, Five, Six, Seven, Nine, Ten, and Thirteen are **DISMISSED** as they pertain to the HDK Defendants; and

- The motion is **DENIED** with respect to Counts Eight, Eleven, and Twelve, as well as the request for punitive damages.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: December 2, 2025

_Tom S Kleeh_

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA